[No. C060618. Third Dist. Sept. 23, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
JASON LEE MOORE, Defendant and Appellant.

## COUNSEL

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Paul E. O'Connor, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCOTLAND, P. J.**—This case illustrates the emotional harm that is often suffered by victims of residential burglary, and the extent to which culprits can be ordered to compensate victims for economic loss resulting from such harm.

Defendant Jason Lee Moore broke into a residence and stole items. One of the victims interrupted the burglary when she arrived home with her sons after picking them up from school. As defendant and his accomplice drove away, one of the sons noted the car's license plate number, which led to defendant's prosecution for residential burglary. A jury convicted defendant, and the trial court found he committed the crime while out on bail and had served two prior prison terms.

Defendant was sentenced to a term in state prison and was ordered to pay $11,840.22 in victim restitution pursuant to Penal Code section 1202.4, which requires that a criminal defendant make full restitution to crime victims for every economic loss suffered as a result of the defendant's crime. (Further section references are to the Penal Code.) The restitution included lost wages of $6,250 for the 50 hours that one of the victims, a doctor, spent attending court proceedings, multiplied by $125 per hour, which the record shows was a conservative estimate of what the victim earned per hour.

On appeal, defendant contends the trial court erred in awarding the victim the full amount of his lost wages. In defendant's view, this is not a compensable economic loss within the meaning of section 1202.4 because the victim was not a witness; he simply came to court on his own volition to watch the proceedings.

■ Disagreeing with defendant's interpretation of section 1202.4, we shall affirm the judgment. As we will explain, even though the victim did not testify as a witness, the wages that he lost while attending court proceedings in the criminal prosecution of defendant constituted economic loss attributable to defendant's misconduct.

## DISCUSSION

"The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132 [123 Cal.Rptr.2d 316].)

Giving section 1202.4 the requisite broad and liberal construction, the trial court did not abuse its discretion in ordering defendant to pay the victim for the wages he lost while attending the pretrial proceedings and trial.

■ " 'In examining the restitution statute, "[t]he intent of the voters is plain: every victim who suffers a loss shall have the right to restitution from

those convicted of the crime giving rise to that loss." [Citation.] As a result, "the word 'loss' must be construed broadly and liberally to uphold the voters' intent." [Citation.] Because the statute uses the language "including, but not limited to" these enumerated losses, a trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior, even if not specifically enumerated in the statute.' [Citation.]" (*People v. Crisler* (2008) 165 Cal.App.4th 1503, 1508 [81 Cal.Rptr.3d 887] (hereafter *Crisler*).) "The only limitation the Legislature placed on victim restitution is that the loss must be an 'economic loss incurred as the result of the defendant's criminal conduct.' [Citations.]" (*Ibid.*)[1]

Accordingly, *Crisler* held that the parents of a murder victim, who were themselves victims of the criminal conduct, were entitled to be reimbursed for their time away from work while they attended the trial of the man who killed their son. This was so because it was "entirely reasonable that the parents of a murder victim will attend the murder trial in an attempt to gain some measure of closure and a sense that justice has been done." (*Crisler, supra*, 165 Cal.App.4th at p. 1509.)

Defendant contends that the decision in *Crisler* was also based upon a determination that the situation presented therein was "not the sort of situation where an award of expenses will 'impermissibly "allow [the] victim to be opportunistic." [Citation.]' [Citation.]" (*Crisler, supra*, 165 Cal.App.4th at p. 1509.) "The same cannot be said in this case," defendant argues. He

---

[1] Section 1202.4, subdivision (f) states in pertinent part: ". . . in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] (A) Full or partial payment for the value of stolen or damaged property. . . . [¶] (B) Medical expenses. [¶] (C) Mental health counseling expenses. [¶] (D) Wages or profits lost due to injury incurred by the victim . . . . [¶] (E) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution. . . . [¶] (F) Noneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288. [¶] (G) Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court. [¶] (H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim. [¶] (I) Expenses incurred by an adult victim in relocating away from the defendant . . . . [¶] (J) Expenses to install or increase residential security incurred related to a crime, as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks. [¶] (K) Expenses to retrofit a residence or vehicle, or both, to make the residence accessible to or the vehicle operational by the victim, if the victim is permanently disabled, whether the disability is partial or total, as a direct result of the crime."

believes that compensating the victim for 50 hours of court proceedings for a two-day trial is excessive because the victim did not need to attend "every single court date, regardless of what was scheduled to occur." In his view, "[c]losure in a murder case is one thing, but fifty hours worth of closure, at $125 an hour, is excessive in a burglary case where no one was hurt and the trial took less than two days."

■ Defendant misunderstands the import of the language he quotes from *Crisler*. It simply conveyed that permitting a crime victim recompense for lost wages while attending trial to gain closure did not impermissibly allow the victim to be opportunistic; it did not limit the decision to families of murder victims, to a specific type of proceeding, or to a specific number of hours of court attendance. A victim's attendance at trial cannot be characterized as a paid vacation, which is the import of defendant's implicit complaint of opportunistic behavior by the victim.

Moreover, because he unduly dismisses the ramifications of psychological harm, defendant is incorrect when he claims that no one was hurt by his conduct. As the victim explained at the sentencing hearing, his "wife and children . . . came home to find a career criminal had invaded the sanctity of their home," which was traumatic enough, but "it's the aftermath that is really significant . . . ." In his words, "[t]here's a lasting and lingering sense of never ultimately being safe in your own home again. There is a constant sense of being violated that does not go away." The victim felt that his children's sense of sanctuary and safety was stolen by defendant. He thanked the law enforcement officers for their sensitivity to his family, and thanked the district attorney and judges at all of the proceedings for "liv[ing] up to the best ideals of our society." He was pleased to have experienced that "the system does work."

These comments undermine defendant's claim that no one was hurt by his conduct, and they explain why the victim felt it was necessary to attend all of the trial proceedings. As in *Crisler*, the victim's attendance at the pretrial and trial proceedings, and the costs associated with that attendance, were a direct result of defendant's criminal behavior. That the victim's attendance was not mandated by statute, that he was not required to address the court at those hearings, and that he chose to attend the proceedings of his own volition, do not relieve defendant from the responsibility to compensate him for the loss attributable to defendant's criminal conduct.

The court did not abuse its discretion in ordering defendant to pay the victim $6,250 for the wages he lost while attending all of the trial proceedings.

## DISPOSITION

The judgment is affirmed.

Sims, J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 23, 2009, S177427. Werdegar, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.