Filed 3/13/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVEN PAUL SALAS,<br><br>    Defendant and Appellant. | D070569<br><br><br><br>(Super. Ct. No. JCF35431) |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge. Judgment modified with directions.

Jason L. Jones, under appointment by the Court of Appeal; Steven Paul Salas, in pro. per., for Defendant and Appellant.

Kamala D. Harris, Attorney General and Kathryn Kirschbaum, Deputy Attorney General, for Plaintiff and Respondent.

Steven Paul Salas pleaded no contest to domestic violence (Pen. Code, §273.5, subd. (a))[1] and the trial court sentenced him to three years in prison. The trial court also

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

ordered Salas to pay victim restitution of $17,194.45, including $14,055.48 for security windows and an alarm system. Section 1202.4, subdivision (f)(3)(J) (hereinafter, section 1202.4(f)(3)(J)) authorizes sentencing courts to award restitution "to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to . . . , [¶] (J) Expenses to install or increase residential security incurred *related to a violent felony*, as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks." (Italics added.)

On appeal, Salas contends that because he was not convicted of a "violent felony" as defined in section 667.5, subdivision (c), the trial court erred in awarding victim restitution for residential security expenses.[2] Based on the statutory definition of a "violent felony," we agree and modify the judgment accordingly.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2015, Salas and his wife, Veronica, were drinking beer in the garage of their home. Salas became angry with Veronica, grabbed her throat, and bashed her head against the floor. Veronica lost consciousness; suffered a cracked skull; sustained multiple contusions and lacerations throughout her body; and lost four to five pints of blood. She was treated at a hospital, where she received seven staples in her head.

---

[2] On August 31, 2016, Salas's attorney filed a brief in accordance with *People v. Wende* (1979) 25 Cal.3d 436 raising no specific issues on appeal. We requested and received supplemental briefing from Salas and the People on the issue of whether the trial court erred in ordering victim restitution for certain residential security devices.

Salas was subsequently charged with domestic violence (§ 273.5, subd. (a); count 1) and false imprisonment by violence (§ 236; count 2). The People initially alleged a great bodily injury enhancement (§ 12022.7, subd. (e)) to count 1, but eventually dismissed both that enhancement and count 2. Salas pleaded no contest to count 1 (§ 273.5, subd. (a)) and was sentenced to three years in prison. Salas's plea did not include a *Harvey* waiver. (See *People v. Harvey* (1979) 25 Cal.3d 754, 758 (*Harvey*) [holding that a court may not consider facts underlying a dismissed count for purposes of aggravating or enhancing a defendant's sentence].)

At Salas's sentencing hearing on April 5, 2016, the trial court heard testimony from both Salas and Veronica. Veronica explained that Salas continued to send threatening e-mails and make threatening phone calls from jail and that she was afraid whenever someone knocked on her door or when she noticed cars idling across the street from her house. Salas also stated in a Valentine's Day card to Veronica that he was going to kill her. To address her fears arising from these threats, she spent $14,055.48 for new security measures for her home—$221.26 for an ADT security alarm system[3], and $13,834.22 for new security windows. Salas asked the court to order Veronica to reimburse him for money she allegedly took from his bank account during the marriage. After hearing this testimony, the trial court ordered "full and complete restitution" paid to Veronica in an amount to be determined at a subsequent restitution hearing.

---

[3]     Veronica actually spent $1,221.26 for the security system, but she received $1,000 from the State's victim compensation fund.

At the May 27 restitution hearing, Salas conceded victim restitution of $3,095.59 to compensate Veronica for repairs to the washer/dryer ($292), two medical bills ($2,537.49), and a new cell phone ($266.10). Salas, however, contested restitution for the security windows and alarm system. He argued he should not have to pay restitution for Veronica's residential security expenses because he was not convicted of a "violent felony" as required by section 1202.4(f)(3)(J) and as defined in section 667.5, subdivision (c). He further argued a nexus was lacking between his crime and the installation of the security windows.

The prosecutor argued Veronica was entitled to additional restitution for newly installed steel doors, a video intercom smart doorbell, a dual lens rear view mirror car camera, and a retainer payment for a divorce attorney. The prosecutor did not address the defense's contention that the violent felony restriction precluded an award of residential security expenses.

The trial court ultimately ordered victim restitution in the amount of $17,194.45, which included $14,055.48 for the security windows and alarm system.[4] The trial court recognized section 273.5, subdivision (a) does not constitute a statutory "violent felony," but concluded that because the probation report clearly showed Salas's conduct caused

---

[4] The court disallowed the other items advocated for by the prosecutor.

Veronica to suffer great bodily injury as defined in section 12022.7,[5] the court was nonetheless authorized to order restitution for residential security expenses.

## DISCUSSION

Salas contends restitution for residential security expenses is recoverable under section 1202.4(f)(3)(J) only when "incurred related to" (*ibid.*) one of the violent felonies defined in section 667.5, subdivision (c). The People acknowledge this violent felony restriction, but argue the list articulated in section 1202.4, subdivision (f)(3) is merely a nonexclusive list of examples, thus granting sentencing courts the power to compensate victims for residential security expenses incurred as a result of *any* felony "justified under the circumstances." As we shall explain, we conclude section 1202.4(f)(3)(J)'s explicit limitation to violent felonies authorizes restitution for residential security expenses only when those expenses are incurred related to a violent felony as defined by section 667.5, subdivision (c).

## I. *Applicable Law*

Ordinarily, the standard of review for a restitution order is abuse of discretion. (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1231.) However, when "the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146.)

---

5      Section 667.5, subdivision (c)(8) includes within the definition of a violent felony "[a]ny felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 . . . ."

Section 1202.4, subdivision (f) provides, with exceptions not applicable here, that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."

Subdivision (f)(3) of section 1202.4 further provides, in pertinent part: "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as a result of the defendant's criminal conduct, including, but not limited to," specified categories of losses. These losses include, for example, compensation for stolen or damaged property, medical expenses, mental health counseling expenses, lost wages or profits, noneconomic losses, attorney fees, and moving expenses. (§ 1202.4, subd. (f)(3)(A)-(L).)

We are concerned here with the category of loss embodied in section 1202.4(f)(3)(J), which authorizes an award of "[e]xpenses to install or increase residential security incurred related to a violent felony, as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks." (§ 1202.4(f)(3)(J).)

Section 667.5, subdivision (c) defines a "violent felony" as any offense or category of offenses specified in that subdivision. Section 273.5, subdivision (a) is not among them. As noted, however, one category of offenses includes those in which the defendant

6

has inflicted great bodily injury and a corresponding enhancement has been charged and proved.  (§ 667.5, subd. (c)(8).)

## II. *Analysis*

We conclude the trial court erred by treating Salas's offense as a violent felony for purposes of awarding restitution.  "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose."  (*Green v. State of California* (2007) 42 Cal.4th 254, 260.)  To determine legislative intent, the court's first step in statutory construction is to "look to the words themselves, giving them their ordinary meanings and construing them in context."  (*People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1104.)

The language of section 1202.4(f)(3)(J) is clear:  it authorizes residential security expenses "incurred related to a violent felony, as defined in subdivision (c) of Section 667.5."  (§ 1202.4(f)(3)(J).)  Although the People correctly point out that a victim's right to restitution must be "broadly and liberally construed" (*People v. Mearns* (2002) 97 Cal.App.4th 493, 500), "the specific language of a statute must prevail over a general, overarching policy . . . perceive[d] in the legislation" (*City of San Jose v. Sharma* (2016) 5 Cal.App.5th 123, 145).

Further, even if the statutory language were ambiguous, legislative history supports a narrow interpretation of section 1202.4(f)(3)(J).  (See *People v. Robles* (2000) 23 Cal.4th 1106, 1111 ["If . . . the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative intent."].)  When subdivision (f)(3)(J) of section 1202.4 was initially enacted,

it stated restitution was available for "[e]xpenses to install or increase residential security incurred related to a *crime*, as defined in subdivision (c) of Section 667.5 . . . ." (Stats. 1999, ch. 584, § 4, italics added.) In 2012, the Legislature revised this subdivision by changing its language to "[e]xpenses to install or increase residential security incurred related to a *violent felony*, as defined in subdivision (c) of Section 667.5 . . . ." (See Stats. 2012, ch. 868, § 3, italics added.) The fact that the Legislature revised—rather than removed—this language indicates the Legislature intended that residential security expenses remain recoverable via restitution only when they are incurred related to a "violent felony." (See *Estate of Simpson* (1954) 43 Cal.2d 594, 600 ["[c]hanges in wording and phraseology are presumed to have been deliberately made"].)

Three other principles of statutory construction further support Salas's interpretation. The first is the principle "*expressio unius est exclusio alterius*, under which 'the enumeration of things to which a statute applies is presumed to exclude things not mentioned.' " (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 89-90.) By expressly permitting recovery for "[e]xpenses to install or increase residential security incurred related to a violent felony," the Legislature by implication did not permit recovery of residential security expenses incurred related to an offense that is *not* a violent felony. While "*expressio unius est exclusio alterius* is no magical incantation, nor does it refer to an immutable rule," it "should be applied 'where appropriate and necessary to the just enforcement of the provisions of a statute.' " (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539.)

8

The second principle is that "[s]ignificance should be given, if possible, to every word, phrase, sentence and part of an act." (*People v. Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 638.) The People ask us to interpret the phrase "including, but not limited to" in subdivision (f)(3) of section 1202.4 to allow for recovery of residential security expenses incurred related to *any* felony committed by a defendant. However, this interpretation would render superfluous the phrase "incurred related to a violent felony, as defined in subdivision (c) of Section 667.5." "[I]nterpretations which render any part of a statute superfluous are to be avoided." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1207.) Therefore, to give meaning to all parts of section 1202.4, subdivision (f)(3)(J) and to avoid a superfluous construction, the reference to "violent felon[ies]" must limit the circumstances in which residential security expenses are recoverable.

The final principle is that courts look to "the entire substance of the statute . . . to determine the scope and purpose of the provision . . . . [Citation.]" (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608.) The language at issue "must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' [Citation.]" (*People v. Mendoza* (2000) 23 Cal.4th 896, 908.) Section 1202.4's other provisions support a narrow interpretation of subdivision (f)(3)(J). For example, although section 1202.4, subdivision (f)(3)(A) permits recovery for stolen goods, the recoverable value of any good is limited to either the replacement cost of the item or the cost to repair. (§ 1202.4, subd. (f)(3)(A).) Likewise, although section 1202.4, subdivision (f)(3)(I)

9

permits restitution for relocation expenses incurred as a result of moving away from the defendant, a victim's expenses must be verified by either law enforcement or a mental health professional as being necessary for the victim's safety. (§ 1202.4, subd. (f)(3)(I).) Both provisions limit the extent to which restitution is available to victims. We thus decline the People's invitation to broadly interpret subdivision (f)(3)(J) of section 1202.4 because doing so would undermine the explicit limitations contained in other provisions of the statute. (See *In re Greg F.* (2012) 55 Cal.4th 393, 406 [courts seek to " 'avoid a construction that would produce absurd consequences' "].)

The statute's plain language and legislative history, and the cited principles of statutory construction, support our conclusion that residential security expenses are recoverable under section 1202.4(f)(3)(J) only when they are "incurred related to a violent felony, as defined in section 667.5, subdivision (c)." Thus, because Salas was not convicted of such an offense, the trial court erred in ordering restitution to Veronica for the residential security expenses she incurred related to Salas's crime.[6]

In reaching this conclusion, we recognize there are strong policy considerations supporting an award of restitution for residential security expenses to compensate victims

---

[6]     We decline to address the Attorney General's argument that the trial court could have considered Salas's post-plea "uncharged conduct" of threatening Veronica to justify an award of residential security expenses. The trial court based its restitution order solely on Salas's conduct related to his domestic violence conviction. Further, the People never asserted this theory at either the sentencing or restitution hearings, thereby forfeiting the theory on appeal. (*People v. Smith* (1977) 67 Cal.App.3d 638, 655 ["It is elementary that a new a theory cannot be raised on appeal where, as here, the theory contemplates factual situations the consequences of which are open to controversy and were not put in issue in the lower court."].)

of certain nonviolent felonies, such as stalking, domestic violence, and others where ongoing security concerns are at issue. However, this is a matter for the Legislature, not the judiciary (see *People v. Rubalcava* (2000) 23 Cal.4th 322, 333 [" '[t]he role of the judiciary is not to rewrite legislation to satisfy the court's, rather than the Legislature's, sense of balance and order' "]), and we would welcome such a review.

DISPOSITION

The May 27, 2016 victim restitution order of $17,194.45 is modified to strike the $13,834.22 reimbursement for the security windows and $221.26 for the ADT security alarm system. The trial court is directed to prepare an amended abstract of judgment to reflect victim restitution in the amount of $3,138.97 and to forward a certified copy to the Department of Corrections and Rehabilitation.

HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

11